# United States District Court
# District of Minnesota

GEORGE A. WALKER

Plaintiff,

v.

**ORDER**
Civil. File No. 00-2604 (MJD/JGL)

NORTHWEST AIRLINES, INC.,

Defendant.

Todd M. Roen, BlueDog, Olson, & Small, P.L.L.P., for, and on behalf of, the Plaintiff.

Tracy J. Van Steenburgh, Halleland, Lewis, Nilan, Sipkins & Johnson, P.A., for, and on behalf of, the Defendants.

## I. INTRODUCTION

The above-entitled matter comes before the Court upon the Report and Recommendation of Chief United States Magistrate Judge Jonathan G. Lebedoff dated October 28, 2003. The Report and Recommendation recommended that Defendant's Motion for Summary Judgment be granted. First, the Chief Magistrate Judge reasoned that Walker's Title VII race and retaliation claims relating to alleged increased scrutiny and discipline are time-barred, because Walker failed to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice occurred. Second, the Chief Magistrate Judge reasoned that Walker's remaining Title VII,



FILED JAN 15 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

section 1981 and Family Medical Leave Act ("FMLA") claims failed on the merits under the traditional McDonnell Douglas burden-shifting analysis. Plaintiff George E. Walker filed timely objections to the Report and Recommendation. Defendant Northwest Airlines, Inc. ("Northwest"), filed a response to Walker's objections.

Pursuant to statute, the Court has conducted a de novo review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Having reviewed the record in this case, the Court adopts the Chief Magistrate Judge's recitations of the facts. For the reasons set forth below, the Court adopts in part, and modifies in part, the Report and Recommendation.

## II. DISCUSSION

A party is entitled to summary judgment when, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323.

Walker raises four objections to the Report and Recommendation. First, Walker argues that the Chief Magistrate Judge erred when he determined that the 180-day statute of limitations, rather than the 300-day statute of limitations, applied to Walker's Title VII claims. Second, Walker argues that the Chief Magistrate Judge has overlooked and mischaracterized Walker's evidence of discrimination. Third, Walker argues that the Chief Magistrate Judge erred when he stated that Walker's Statement of Facts was replete with

factual assertions wholly unsupported by the record. Fourth, Walker argues that the Chief Magistrate Judge erred when he did not address Walker's renewed call for additional time in which to conduct discovery. The Court will address each objection in turn.

**A. Applicable Limitations Period**

A Title VII complainant must file his charge with the EEOC within 180 days after the alleged unlawful employment practice occurred, or within 300 days after such occurrence if the complainant initially instituted discrimination proceedings with a state or local agency. 42 U.S.C. § 2000e-5(e)(1). If a claim is not filed within these time limits, it is time-barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). The time period begins to run on the date on which the adverse employment action is communicated to the plaintiff. Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995).

Walker filed his charge with the EEOC on March 2, 2000. (Neither party objects to the Chief Magistrate Judge's determination that March 2, 2000, constitutes the date of the EEOC charge.) Walker claims that the 300-day limitation period should apply to his claim, because his EEOC charge was cross-filed with the Arizona Civil Rights Division ("ACRD") pursuant to a worksharing agreement between the two agencies.

In response to Northwest's motion for summary judgment, Walker relied on documentation from the ACRD and the EEOC showing that his EEOC charge had been cross-filed with the ACRD. Although Northwest specifically requested this information in discovery, Walker failed to produce these documents and incorrectly represented that all such

documents had been produced to Northwest. Northwest had also requested cross-filing information from the ACRD under the Freedom of Information Act, but was informed that the ACRD had no record of a filing by Walker. Because Walker withheld these documents without substantial justification, and could not show that the failure to produce was harmless, the Chief Magistrate Judge disregarded the documents for the purpose of summary judgment. Fed. R. Civ. P. 37(c)(1). Without the documentation showing that Walker's claim was cross-filed with the ACRD, there was no evidence that Walker's claim had been initially instituted with a state or local agency. Thus, the Chief Magistrate Judge held that the 180-day time period applied to Walker's claim.

Walker contends that the failure to produce the documents was harmless, because Northwest was on notice that Walker's EEOC charge had been cross-filed with the ACRD. Walker's EEOC charge listed the ACRD as the applicable state or local agency and contained an unchecked box where the complainant could request that the form also be filed with the state agency. Because Northwest was on notice that Walker's claim was cross-filed, Walker contends that the 300-day limit applies and that he may allege adverse actions that occurred on or after May 7, 1999.

Walker is correct that, when the EEOC and state agency have an applicable worksharing agreement, the EEOC charge is deemed to have been cross-filed with the state agency even when the box requesting cross-filing is not checked. See, e.g., Worthington v. Union Pac. R.R., 948 F.2d 477, 480 (8th Cir. 1991) (holding that a charge filed with a state

agency is deemed to have been filed with the EEOC at that time even though the complainant failed to place an "x" in the box requesting cross-filing, when the EEOC and state agency have a worksharing agreement equivalent to the agreement in this case).

The parties have not submitted the text of the Arizona worksharing agreement to this Court; however, the agreement is a public record, of which the court may take judicial notice. See Caha v. United States, 152 U.S. 211, 221-22 (1894) (taking judicial notice of agency rules and regulations); United States v. City of St. Paul, 258 F.3d 750, 753 (8th Cir. 2001) (taking judicial notice of an agency handbook "although not adopted by administrative rule subject to notice and comment"); Bolinksy v. Carter Machinery Co., Inc., 69 F. Supp. 2d 842, 845 n.5 (W.D. Va. 1999) (taking judicial notice of worksharing agreement between Virginia Council on Human Rights and EEOC).

Title VII expressly allows the EEOC to enter into worksharing agreements with state and local agencies. Worthington v. Union Pac. R.R., 948 F.2d at 480. The worksharing agreement between the ACRD and the EEOC provides that the EEOC is deemed an agent of the ACRD to receive charges and that a proceeding with the ACRD is automatically initiated upon receipt of charges with the EEOC. Worksharing Agreement Between Arizona Civil Rights Division and Equal Employment Opportunity Commission for Fiscal Year 2000 § II(A). By filing a claim with the EEOC, Walker commenced proceedings with both the EEOC and the ACRD. The agreement also contains a waiver of jurisdiction by the ACRD:

> For charges originally received by the EEOC and/or to be initially processed by the EEOC, the ACRD waives its right of exclusive jurisdiction to initially

> process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

Arizona Worksharing Agreement § III(A)(1). By filing with the EEOC, Walker simultaneously commenced and terminated state agency action. Worthington, 948 F.2d at 482; Bolinksy, 69 F. Supp. 2d at 847.

Under the worksharing agreement, Walker's charge was initiated with a state agency upon filing with the EEOC and the 300-day period applies, regardless of whether the Walker produces proof that the EEOC charge was cross-filed with the state agency. See also Shiban v. Intel Corp., No. CV-00-401, 2002 WL 31371971, at *2 n.2 (D. Ariz. Mar. 28, 2002) (noting that the filing requirements under Title VII and the ADEA are analogous and that "[i]n dual filing states, such as Arizona . . . the statute of limitations [for filing an ADEA charge with the EEOC] is 300 days not 180"); Schell v. Harris/Shcolnik & Assoc., Inc., 1998 WL 960327, at *1 (D. Ariz. Nov. 6, 1998) (holding that "[a] plaintiff alleging a violation of Title I of the ADA must file a charge of discrimination with the EEOC within 180 days of the accrual of his cause of action, or within 300 days of the accrual in a deferral jurisdiction such as Arizona").

Even without considering the excluded documentation regarding the EEOC's cross-filing of Walker's claim with the ACRD, Walker's EEOC charge was deemed filed with the ACRD when he filed the charge with the EEOC. Thus, Walker's Title VII claims were governed by the 300-day period, not the 180-day period and any adverse actions that

occurred on or after May 7, 1999 are not time-barred.

Construing the facts in favor of Walker, Walker received his the Notice of Decision Making Leave ("DML"), an adverse employment action by Northwest, on May 15, 1999. Thus, Walker's Title VII claim based on the DML received from Northwest while in Phoenix is not time-barred. Walker's first objection is sustained. However, as noted below, Walker's Title VII claim based on discipline received from Northwest, such as the DML, while in Phoenix fails on the merits.

**B. Characterization of Walker's Evidence of Discrimination**

Walker argues that the Chief Magistrate Judge "mischaracterizes Walker's evidence and fails to consider the evidence in the light most favorable to Walker." Walker notes two alleged examples of mischaracterization, which this Court will address. Walker then states that the Chief Magistrate Judge was incorrect when he determined that "Walker has failed to present sufficient evidence to make out a prima facie case under Title VII termination and retaliation claims, § 1981 claims of increased scrutiny and discipline and termination, and termination claim under the FMLA." As noted in the Report and Recommendation, such broad statements, without citation to the record, impede the Court's ability to construe the facts in the light most favorable to the plaintiff. However, this Court has conducted a de novo review of the record, and addresses each claim below.

**1. Alleged Examples of Mischaracterization**

Walker asserts that the Chief Magistrate Judge erred when he determined that Walker

had testified that Walker's co-worker, Miller, "was not treated more favorably than he." The Report and Recommendation also noted that "there is some evidence suggesting that Miller, the other Lead ESE, was scrutinized less than Walker," demonstrating that the Chief Magistrate Judge took all of Walker's evidence into account. The Report and Recommendation determined that this evidence was attributable to the fact that, unlike Miller, Walker was a short-term, temporary employee.

Walker admits that he testified,"I wouldn't use the word 'favorably'" to describe how Miller was treated in relation to Walker. The Court does not comprehend how the Chief Magistrate Judge was "mischaracterizing" evidence by quoting Walker's own deposition testimony. The Court is not required to ignore Walker's own testimony when deciding a motion for summary judgment merely because that testimony is not favorable to Walker. Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1315 (8th Cir. 1996). Walker's objection is without merit.

Walker also objects that the Chief Magistrate Judge improperly weighed Walker's testimony on two issues: whether white employees were treated differently than he was for travel pass violations and the nature and severity of co-worker Patricia Chrzanowski's alleged harassment. The Court first addresses Walker's evidence of disparate treatment. The Court then addresses Walker's evidence of Chrzanowski's harassment in the context of its discussion of the impact of the recent Supreme Court decision in Desert Palace, Inc. v. Costa, 539 U.S. —, 123 S. Ct. 2148 (2003).

**2. Walker's Evidence of Disparate Treatment**

Walker's only assertion regarding whether Northwest treated travel pass violations by white employees differently than Walker's violation is one sentence in his brief: "It is well known that there are white employees who have violated the travel pass policy who were not terminated or even disciplined." Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 20-21. Walker provides no citation to the record for this "well known" fact and does not specify any similarly situated Northwest employee who was treated differently than Walker for violating the travel pass policy. In opposing a motion for summary judgment, Walker "must demonstrate the existence of specific facts that create a genuine issue for trial; mere allegations or denials are not enough." Lambert v. City of Dumas, 187 F.3d 931, 934-35 (8th Cir. 1999). It is well established that "[s]tatements of counsel are not evidence and do not create issues of fact." Exeter Bancorporation, Inc., v. Kemper Secs. Group, Inc., 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (citation omitted). Thus, the Chief Magistrate Judge was correct in determining that Walker did not create a genuine issue of material fact regarding whether Northwest treated white employees differently than Walker for travel pass violations.

**3. Walker's Evidence of Harassment by Chrzanowski and the Impact of Desert Palace**

Walker's section 1981 claim is based on alleged racial harassment by a co-worker, Patricia Chrzanowski. Walker objects that the Chief Magistrate Judge improperly rejected Walker's evidence regarding the nature and severity of Chrzanowski's harassment. In order

to properly address this objection, the Court must examine the burden-shifting framework applicable to Walker's claims in light of the Supreme Court's recent decision in Desert Palace, Inc. v. Costa, 539 U.S. —, 123 S. Ct. 2148 (2003).

**a. The Impact of Desert Palace**

The Chief Magistrate Judge recommends that Defendant's motion for summary judgment be granted on all claims, because Plaintiff's claims fail on the merits. The Chief Magistrate Judge analyzes Walker's Title VII, section 1981, and FMLA claims under the McDonnell Douglas analysis, because Walker relied on circumstantial evidence of discrimination. However, the Supreme Court has recently clarified that, absent a statutory mandate, courts should not differentiate between circumstantial and direct evidence in discrimination cases. Desert Palace, Inc. v. Costa, 539 U.S. —, 123 S. Ct. 2148, 2154 (2003). In Desert Palace, the Supreme Court held that a Title VII plaintiff was entitled to a mixed-motive jury instruction if she presented direct or circumstantial evidence of discrimination. Id. at 2155. The Desert Palace decision is based on the Supreme Court's reasoning that courts have always treated circumstantial and direct evidence alike in civil, and even criminal, cases. Id. at 2154. The Court reasoned that there was no basis for weighing direct evidence more heavily than circumstantial evidence in Title VII cases, absent a statutory command.

Under a mixed-motive analysis, the employee does not bear the burden of proving that the employer's legitimate non-discriminatory reason for taking an adverse employment action

is pretextual. Instead, the employee merely needs to show that, even if the employer's non-discriminatory reason is true, the employee's characteristic was also a motivating factor in the employer's decision. Cram v. Lamson & Sessions Co., 49 F.3d 466, 471 (8th Cir. 1995). If the employee succeeds in meeting his burden, the burden then shifts to the employer to show that, but for the employee's protected characteristic, it would have taken the same employment action. Id.

Thus, if the employee fails to prove that the employer's reason is pretextual, he may still survive summary judgment if he has offered enough evidence to raise a genuine issue of material fact as to whether his protected characteristic was, at least, a motivating factor in the employer's decision. The question becomes one of mixed motive, regardless of whether the employee's evidence of discrimination is direct or circumstantial. Even if the employer's non-discriminatory reason is true - it is not pretext - the employee's claim can survive if he has presented sufficient evidence to raise a genuine issue of material fact as to whether his protected characteristic was, at least, a motivating factor in the employer's decision. See Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa, Inc., No C02-3038, 2003 WL 22290229, at *15 (N.D. Iowa Oct. 7, 2003).

The Desert Palace opinion specifically addressed Title VII claims, not section 1981 claims. However, the Eighth Circuit has consistently applied the same standard to section 1981 claims and Title VII claims. See, e.g., Ross v. Kan. City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002). See also Glass v. Bemis Co., Inc., 22 F. Supp. 2d 1063, 1066-68

(D. Neb. 1998) (applying mixed-motive analysis to section 1981 claim). Additionally, like Title VII, section 1981 does not contain language directing courts to weigh direct evidence more heavily than circumstantial evidence.

Walker does not bear the burden of establishing that Northwest's legitimate, non-discriminatory reasons for disciplining and terminating Walker were pretext. Rather, Walker must only prove by the preponderance of the evidence either that Northwest's reasons were a pretext for discrimination, or that, even if Northwest's reasons were true, Walker's protected characteristic was another motivating factor. The Report and Recommendation thoroughly analyzed how Walker failed to show that Northwest's reasons were pretext, but did not analyze whether Walker was able to show that, even if Northwest's reasons were true, Walker's protected characteristic was also a motivating factor. This Court modifies the Report and Recommendation by analyzing each of Walker's claims under a mixed-motive analysis in addition to the McDonnell Douglas analysis.

**b. Title VII and Section 1981 Race Discrimination Claims for Increased Workplace Scrutiny and Discipline in Phoenix**

The Chief Magistrate Judge first analyzes Walker's section 1981 claims based on increased workplace scrutiny and discipline in Phoenix, and notes that the same analysis applies to Walker's Title VII racial discrimination claim. As the Report and Recommendation explained, Walker did not show that he was performing his job at a satisfactory level, did not show specific evidence of disparate treatment of similarly situated employees, and produced virtually no evidence to support an inference of racial animus.

Even under the Desert Palace analysis, assuming that Walker had established his prima facie case, Walker failed to presented sufficient evidence to raise a genuine issue of material fact as to whether his protected characteristic was, at least, a motivating factor in Northwest's decisions to discipline and scrutinize Walker. Because Walker offered virtually no evidence that race was a motivating factor in workplace scrutiny and discipline while in Phoenix, Walker's section 1981 claim and Title VII claim based on those actions are subject to summary judgment under either a McDonnell Douglas or a Desert Palace analysis.

**c. Termination in San Francisco**

Walker claims that his termination in December 1999 violated both Title VII and section 1981. As the Report and Recommendation detailed, Walker did not establish that he had performed his job satisfactorily and admitted that he violated Northwest's established travel pass policy. Additionally, Walker's charges of discriminatory conduct were aimed at Northwest employees in Phoenix, who had no role in Northwest's decision to terminate his employment. Walker has presented no specific factual evidence that race was a motivating factor in Northwest's decision to terminate him.

**d. Hostile Work Environment in Phoenix**

Walker claims that racial harassment by his co-worker, Chrzanowski, in Phoenix constituted a hostile work environment under section 1981. Walker also claims that increased scrutiny and discipline that he received in Phoenix constitute harassment. As noted above, Walker has failed to raise a genuine issue of material fact regarding whether the

increased scrutiny and discipline were motivated by racial animus, because there is no causal nexus between Walker's race and Vandermolen's actions.

Walker testified that Chrzanowski repeatedly referred to him as "lips," made comments regarding sexual activity and breast implants, and put her finger in Walker's face and yelled at him. Although when viewed in isolation, many of Chrzanowki's actions do not appear to be racial, "[t]he predicate acts which support a hostile-environment [racial] harassment claim need not be explicitly [racial] in nature. Rather, the key issue 'is whether members of one [race] are exposed to disadvantageous terms or conditions of employment to which members of the other [race] are not exposed." Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993). See also Hathaway v. Runyon, 132 F.3d 1214, 1222 (8th Cir. 1997) ("Not every aspect of a work environment characterized by hostility and intimidation need be explicitly [racial] in nature to be probative."). At this stage of the proceedings, the Court must draw all inferences in favor of Walker. Kopp, 13. F.3d at 269. Additionally, "summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998). Thus, Chrzanowki's harassing behavior, combined with her use of a racial term to refer to Walker, could be viewed together as a pervasive pattern of harassment, motivated by Walker's race.

Northwest also argues that it took prompt and effective remedial action by speaking to Chrzanowski and conducting an internal investigation that resulted in her termination.

However, Northwest took nine months to complete its investigation of Chrzanowski. Whether an informal discussion with Chrzanowski and an investigation that took nine months to complete constituted an appropriate response is question best left for a jury. See, e.g., Howard v. Burns Bros., Inc., 149 F.3d 835, 841 (8th Cir. 1998) ("Once the plaintiff makes a submissible case, the promptness and adequacy of the employer's response to a complaint of harassment are fact questions for the jury to resolve."). Thus, the Court denies Northwest's motion for summary judgment as to Walker's section 1981 hostile work environment claim

**e. Family Medical Leave Act Retaliation Claim**

While the Chief Magistrate Judge did not analyze Walker's FMLA claim under a Desert Palace analysis, the Report and Recommendation noted that Walker failed to show any causal connection between his exercise of FMLA rights and his termination, other than the fact that he was on FMLA leave when he was terminated. This Court need not decide whether Desert Palace applies to FMLA claims, because even under a mixed-motive analysis, Walker's FMLA claim fails. An employer is entitled to terminate an employee who violates company policy while on leave. Sepe v. McDonnell Douglas Corp., 176 F.3d 1113, 1115 (8th Cir. 1999). Additionally, Walker's leave began on October 23, 1999, and Northwest did not terminate Walker unitl December 23, 1999, two months later. Cf. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002) (holding that two-week period between taking FMLA leave and being fired was "barely" enough temporal proximity to establish a prima

facie case of causation, and noting that two months was too long a period of time). Because Walker offered no evidence that his exercise of his FMLA rights was a motivating factor in his termination, other than timing, he failed to raise a genuine issue of material fact regarding his FMLA claim, even under a mixed-motive analysis.

**C. Inaccuracies in Walker's Statement of Facts**

Walker asserts that the Chief Magistrate Judge's statement that Walker's statement of facts "is replete with factual assertions wholly unsupported by the record to which he cites" is "unfair." However, Walker admits that he frequently cited to an exhibit which he failed to file or to provide to the Court, and that he failed to provide the correct citation for his assertion that a co-worker used a particular racially derogatory term against Walker. In his objections to the Report and Recommendation, Walker continues this practice by failing to provide the Court with the alleged correct citation to the record for the racially derogatory term and by continuing to make assertions without any citation to the record. The Court has reviewed the record in this matter and finds that Walker's objection has no merit.

**D. Walker's Request for Additional Time for Discovery**

Walker argues that the Chief Magistrate Judge erred when he did not address Walker's renewed call for additional time in which to conduct discovery, made orally during the summary judgment hearing. The Chief Magistrate Judge issued a pretrial order on April 26, 2002, ordering that discovery be completed by March 1, 2003. The

Chief Magistrate Judge has already twice issued orders denying Walker's motions for additional discovery. This Court affirmed one of those orders on October 3, 2003. Now, Walker argues that the Chief Magistrate Judge should have again addressed Walker's desire for additional discovery, although Walker failed to serve or file a new motion seeking additional time for discovery by the date of the hearing on the motion for summary judgment.

A party opposing summary judgment who desires additional time for discovery must file "an affidavit with the trial court showing 'what specific facts further discovery might unveil.' Where a party fails to carry her burden under Rule 56(f), 'postponement of a ruling on a motion for summary judgment is unjustified.'" Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 911 (8th Cir. 1999) (citations omitted). Walker filed a Rule 56(f) request for a continuance on September 4, 2003, which the Chief Magistrate Judge denied. Walker attempts to revive his Rule 56(f) motion with his oral request for additional time made at the October 9, 2003, summary judgment hearing before the Chief Magistrate Judge. The Chief Magistrate Judge has already denied Walker's Rule 56(f) motion, and Walker did not file a new Rule 56(f) affidavit and motion with the Chief Magistrate Judge. Walker has failed to carry his burden under Rule 56(f) and postponement of a ruling on Northwest's motion for summary judgment would be unjustified.

## IV. CONCLUSION

In conclusion, Walker raised four objections to the Report and Recommendation. The Court overrules Walker's third and fourth objections. The Court sustains Walker's first objection, regarding the applicability of the 300-day time period to Walker's Title VII claim; however, Walker's Title VII claim fails on the merits. The Court sustains Walker's second objection only as to his claim of racial harassment by Chrzanowski. Finally, the Court modifies the Report and Recommendation in order to comply with Desert Palace, Inc. v. Costa, 539 U.S. —, 123 S. Ct. 2148, 2154 (2003). Thus, the Court grants summary judgment to Northwest Airlines on all claims, except for Walker's section 1981 claim of racial harassment based on the actions of Chrzanowski.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. The Chief Magistrate Judge's Report and Recommendation, filed October 28, 2003, is hereby **ADOPTED** in part and **MODIFIED** in part as follows:

   The Court adopts the Factual Background, Section II, and Standard of Review, Section III, in their entirety;

   The Court modifies the discussion of the Statute of Limitations on Title VII Claims, Section IV(A), as set forth in this opinion to conclude that the 300-day statute of limitations applies to Plaintiff's time to file his charge with the EEOC;

   The Court modifies the discussion of Remaining Title VII and § 1981 Claims, Section IV(B), as set forth in this opinion, to include the Desert Palace analysis and to conclude that Plaintiff's claim of harassment by Chrzanowski in violation of 42 U.S.C. § 1981 survives summary judgment.

2. Defendant's Motion for Summary Judgment [Docket No.96] is **GRANTED** as to

Count I of the Complaint: Plaintiff's Title VII claim based on scrutinizing, disciplining, and terminating Plaintiff;

Count II of the Complaint: Plaintiff's Title VII retaliation claim; and

Count IV of the Complaint: Plaintiff's Family Medical Leave Act claim.

3. Defendant's Motion for Summary Judgment [Docket No. 96] is **DENIED** as to

Count III: Plaintiff's claim under 42 U.S.C. § 1981.

1-14-04
Date

Judge Michael J. Davis
United States District Court