**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| George E. Walker, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil File No. 00-2604 (MJD/JGL) |
| | ) | |
| Northwest Airlines, Inc., | ) | |
| | ) | **PLAINTIFF'S MEMORANDUM OF** |
| Defendant. | ) | **LAW IN OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **RECONSIDERATION** |
| | ) | |

## INTRODUCTION

Plaintiff George E. Walker ("Walker"), respectfully submits this memorandum in opposition to Defendant's Motion for Reconsideration. The Defendant seeks reconsideration of the District Court's Order denying Defendant's Motion for Summary Judgment on Count III of Walker's Complaint. Defendant asserts that Walker's racial harassment claim under 42 U.S.C. § 1981 must be dismissed in light of the Eighth Circuit's recent opinion in *Jackson v. Flint Ink North American Corp.*, ___ F.3d ___, 2004 WL 1237648 (8th Cir. June 7, 2004).

However, the *Jackson* case is not dispositive of Walker's racial harassment claim. Although *Jackson* does discuss whether the existence of racially derogatory behavior in the workplace constitutes a hostile work environment, the case does not change either the relevant standard or the analysis contained in the Court's January 14, 2004-Order in any way. The Court should therefore deny the Defendant's Motion.

## BACKGROUND

On November 17, 2003, Walker filed timely objections to the Report and

Recommendation of Chief Untied States Magistrate Judge Jonathan G. Lebedoff, which recommended that the Defendant's Motion for Summary Judgment be granted in its entirety. The Defendant filed a response to Walker's objections, and in an Order dated January 14, 2004, United States District Court Judge Michael J. Davis granted Defendant's Motion for Summary Judgment on Counts I, II, and IV of Plaintiff's Complaint and denied Defendant's Motion on Count III. A copy of the District Court's Order is attached to the Affidavit of Todd M. Roen as Exhibit 1.

On June 11, 2004, the Defendant requested permission from the Court pursuant to Local Rule 7.1(g) to file a motion for reconsideration. The request was based solely on the assertion that a recently decided Eighth Circuit case (i.e., *Jackson*, 2004 WL 1237648 ) has a direct bearing on Defendant's summary judgment motion pertaining to Walker's § 1981 claim. Judge Davis granted Defendant's request over Walker's objection and referred the matter to Chief Magistrate Judge Lebedoff.

## <u>ARGUMENT</u>

### A. Summary Judgment Standard

Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party seeking summary judgment bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that movant is entitled to judgement as a matter of law. *Id.* at 322. "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995).

In deciding whether to grant summary judgment, the court must view facts in the light most favorable to the party opposing the motion. *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). In addition, summary judgement should seldom be used in employment discrimination cases, as such actions are inherently fact based. *Hindman v. Transkrit* Corp., 145 F.3d 986, 990 (8th cir. 1998); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994).

**B. 42 U.S.C. § 1981 Racial Harassment Claim**

In order to establish his intentional discrimination claim under § 1981, Walker was required to prove that: 1) he was a member of a protected group; 2) he was subjected to unwelcome harassment; 3) the harassment was because of his membership in the group; 4) the harassment affected a term, condition or privilege of his employment; and 5) the employer knew or should have known about the harassment but failed to take prompt and effective remedial action. *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 907 (8th Cir. 2003).

The hostile work environment must be both objectively severe, as it would be viewed by a reasonable person, and subjectively severe, as it was actually viewed by the victim. *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 652 (8th Cir. 2003). Harassment that is severe and pervasive is deemed to affect a term, condition, or privilege of employment. *Id.* In making the necessary inquiry, the Court looks at all of the circumstances, including the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance and whether it unreasonably interferes with an

employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)

Walker fully met his burden by introducing evidence of the following:

* Chrzanowski called Walker a "nigger" and "monkey" many times. She also often had conversations about "niggers" in general.[1] Statement of Discrimination and Retaliation at p. 1, which Statement was included in Exhibit J to the Affidavit of Todd M. Roen, filed and served with the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. Said Exhibit J was a true and correct copy of Walker's EEOC Intake Questionnaire, with additional statement and exhibits, dated February 7, 2000. A copy of the Statement of Discrimination and Retaliation portion of Exhibit J is attached to the current Affidavit of Todd M. Roen as Exhibit 2.

* Chrzanowski also used racial slurs to refer to Walker while she was talking on the phone to 3rd parties, but in his presence. One specific racial slur was "lips," but she would also say a lot of other things as well. These comments were made to his face, but indirectly, as Chrzanowski was talking to someone else on the phone right behind Walker, telling the person that she was referring to her chief (i.e., Walker). Walker Depo. at 89:23-24, 91:19-22, 92:20-25, 93:1-5.

* Chrzanowski also called Walker "lips" in front of two co-workers, while Walker was on the telephone with a third person. Statement of Discrimination and Retaliation at pp. 1-2.

* Chrzanowski constantly discussed her "extreme" activities away from work, such as her "swinger vacations" and her recent breast implants. Statement of Discrimination and Retaliation at p. 1.

* Chrzanowski consistently argued with Walker and used obscenities and racial slurs to address him. Statement of Discrimination and Retaliation at p. 1.

* Chrzanowski bad-mouthed Walker to co-workers, telling them how much she hated him. She also used bad slurs to other employees on the night shift about him. Walker Depo at 89:21-22, 91:19-22, 93:17-18.

---

[1] Defendant claims in footnote 3 of its Memorandum of Law in Support of Motion for Reconsideration that Walker made "factual" assertions in his memorandum in response to Defendant's Motion for Summary Judgment that were unsupported by the record. As an example, Defendant states that "though Plaintiff asserted in his response that Chrzanowski referred to him as 'nigger,' there is no evidence in the record … indicating that Chrzanowski ever used that term in referring to Walker." Although Plaintiff omitted the citation, Chrzanowki's use of the term "nigger" was and is clearly in the record.

* Chrzanowski's discrimination and harassment made it very difficult for Walker to perform his job duties. Walker Depo at 89:12-19.

* One time Chrzanowski got in Walker's face, touched his nose with her finger and cursed him out. Walker Depo at 93:15-17.

* Chrzanowski's hatred for and negativity about Walker caused slow-downs in the work place. Walker Depo at 94:10-12.

* Chrzanowski would actually change the work book, effectively changing the work assignments given her by Walker. Walker Depo at 93:12-14.

* Chrzanowski made the workplace so unbearable for Walker that at times he became physically ill. Statement of Discrimination and Retaliation at p. 2.

* The Defendant's own investigator for Walker's internal EEO Complaints confirmed that Chrzanowski made racially derogatory comments in the workplace that violated Defendant's Discrimination and Harassment Policy, although curiously enough, he found Chrzanowski never made a racial comment "to" Walker. Exhibit 21 to George Walker Deposition (i.e., 12/11/99 letter from Defendant to Walker informing him of results of his two internal EEO complaints).

* The Defendant's own investigator for Walker's internal EEO Complaints also confirmed that Chrzanowski spoke about her sexual activities and her breast implants in the workplace (although once again, somehow he couldn't find that the comments were directed at, or in an attempt to harass Walker). Exhibit 21 to George Walker Deposition (i.e., 12/11/99 letter from Defendant to Walker informing him of results of his two internal EEO complaints).

* Walker complained to his supervisors concerning Chrzanowski's racial and sexual harassment and eventually had to file an EEO complaint in an attempt to stop the harassment. Walker Depo. at 89:21-25, 94:3-25, 137:15-25, Statement of Discrimination and Retaliation at pp. 2-3.

* Defendant merely coached Chrzanowski in response to Walker's allegations of discrimination and harassment. Barnhill Depo. at 23:4-23, 24:1-19.

* According to Walker, the coaching had no effect and the discrimination got worse after the coaching. Walker Depo at 137:2-16.

* It took the Defendant almost nine months to complete its investigation into Walker's complaints. Statement of Discrimination and Retaliation at pp. 3, 8.

Judge Davis correctly analyzed Walker's racial harassment claim under § 1981 and found that "Chrzanowski's harassing behavior, combined with her use of a racial term to refer to Walker, could be viewed together as a pervasive pattern of harassment, motivated by Walker's race." Exhibit 1 at p. 14. Judge Davis also determined that in regard to the question of whether the Defendant took prompt and effective remedial action that "whether an informal discussion with Chrzanowski and an investigation that took nine months to complete constituted an appropriate response is question best left for a jury." *Id.* at p. 15.

**C. *Jackson* is not dispositive**

The *Jackson* case is not dispositive of Walker's § 1981 claim. In *Jackson,* the Eighth Circuit merely determined that the graffiti and episodic racial slurs involved in that particular case did not reach the level of severity and pervasiveness necessary to constitute a violation of Title VII. The case did not announce any new standard or test, but simply applied the law as set forth in previous cases. *See Jackson*, 2004 WL 1237648 at 1, citing to *Palesch v. Missouri Comm'n on Human* Rights, 233 F.3d 560, 566 (8th Cir. 2000) for the relevant standard necessary to prevail on hostile work environment claim, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) for the proposition that work environment must have been both objectively and subjectively offensive, and *Harris*, 510 U.S. at 23, for the proposition that in making the relevant inquiry it is necessary to look "at all the circumstances."

*Jackson* is readily distinguishable from the hostile work environment in Walker's situation. Contrary to Defendant's assertion, Walker's evidence of hostile work environment is substantially more compelling that the evidence presented by the plaintiff in *Jackson*. Whereas *Jackson* merely involved incidents where the plaintiff heard his supervisor refer to him as "that

damn nigger," the plant manager use the term "black or "damn black" in "some unspecified context" and four incidents where co-workers made racially offensive remarks in various contexts, some of which were not even directed at plaintiff, Walker was subjected to much more.

Chrzanowski's conduct went beyond mere offensive utterances, and included behavior that was physically threatening to Walker and which made it extremely difficult for him to perform his job duties. The discriminatory conduct was severe enough to make Walker physically ill on a number of occaisions. Additionally, the racially offensive remarks made by Chrzanowski were more frequent in nature than the comments to the plaintiff in *Jackson*. In addition to the racial and sexual slurs, Chrzanowski's hatred for and negativity about Walker caused problems for the night shift, to include slow downs in the work place.

## CONCLUSION

The *Jackson* case is not dispositive of Walker's racial harassment claim because it does not change either the relevant standard or the analysis contained in the Court's January 14, 2004-Order in any way. For this and all of the above stated reasons, Walker respectfully requests that the Court deny the Defendant's Motion for Reconsideration.

Dated: August 6, 2004

BLUEDOG, OLSON & SMALL, P.L.L.P.
/s/ Todd M. Roen
Todd M. Roen, Reg. No. 0270271
Southgate Office Plaza, Suite 500
5001 West 80th Street
Bloomington, MN 55437
Telephone: 952-893-1813

ATTORNEY FOR PLAINTIFF
GEORGE E. WALKER