# EXHIBIT 5

Only the Westlaw citation is currently available.

United States Court of Appeals,
Eighth Circuit.

Thomas BAINBRIDGE, Appellant,
v.
LOFFREDO GARDENS, INC., Appellee.

No. 03-3192.

Submitted: April 12, 2004.
Filed: Aug. 4, 2004.

Background: Former employee sued former employer for hostile environment discrimination and retaliation under Title VII, § 1981, and Iowa civil rights statute. The United States District Court for the Southern District of Iowa, James E. Gritzner, J., 2003 WL 21911063, entered summary judgment for former employer. Former employee appealed.

Holdings: The Court of Appeals, Fagg, Circuit Judge, held that:
(1) managers' alleged racially offensive remarks, if proven, did not create hostile environment;
(2) employee failed to exhaust administrative remedies for his Title VII and Iowa retaliation claims; and
(3) employee established causal connection between his complaints about alleged racial slurs and his termination, as required for prima facie case of retaliation under § 1981.

Affirmed in part; reversed and remanded in part.

Arnold, Circuit Judge, dissented and filed opinion.

[1] Civil Rights ⚷ 1147

78k1147 Most Cited Cases

To prevail on a Title VII hostile work environment claim, an employee is required to show he is member of a protected group, he was subjected to unwelcome harassment, the harassment was because of his membership in the group, and the harassment affected a term, condition, or privilege of his employment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights ⚷ 1147
78k1147 Most Cited Cases

To be a hostile work environment actionable under Title VII, a work environment must have been both objectively and subjectively offensive. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights ⚷ 1147
78k1147 Most Cited Cases

To decide in a Title VII action whether a work environment is objectively offensive, that is, one which a reasonable person would find hostile or abusive, the Court of Appeals examines all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[4] Civil Rights ⚷ 1147
78k1147 Most Cited Cases

To constitute an objectively offensive work environment under Title VII, the discriminatory conduct must be so severe or pervasive that it alters the conditions of the plaintiff's employment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[5] Civil Rights ⚷ 1147
78k1147 Most Cited Cases

A hostile work environment exists under Title VII when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

incidents. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[6] Civil Rights ⚷ 1147
78k1147 Most Cited Cases

Managers' alleged racially offensive remarks about Asians, made approximately once a month during employee's two years of employment, and their alleged racial slurs referring to other minorities, if proven, did not create hostile environment, in violation of Title VII, for employee whose wife was Japanese, where remarks were sporadic, and were not about employee, his wife, or their marriage, but were used in reference to customers, competitors, or other employees. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[7] Civil Rights ⚷ 1516
78k1516 Most Cited Cases

[7] Civil Rights ⚷ 1715
78k1715 Most Cited Cases

Employee failed to exhaust administrative remedies for his retaliation claims under Title VII and Iowa civil rights statute, where he failed to check box next to "Retaliation" on administrative complaint form and did not allege any facts in form connecting his termination with alleged racial slurs. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Iowa Code § 216.

[8] Civil Rights ⚷ 1243
78k1243 Most Cited Cases

To establish a prima facie retaliation claim under § 1981, which guarantees equal contract rights, an employee must show he engaged in statutorily protected activity, that the employer took adverse employment action against him, and that there is a causal connection between the two events. 42 U.S.C.A. § 1981.

[9] Civil Rights ⚷ 1405
78k1405 Most Cited Cases

If an employee makes a prima facie retaliation claim under § 1981, which guarantees equal contract rights, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision to terminate the employee, and, at the third step, the burden shifts back to the employee to show the legitimate reason is pretextual. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[10] Civil Rights ⚷ 1252
78k1252 Most Cited Cases

Employee established causal connection between his complaints about managers' alleged racial slurs and his termination, as required for prima facie case of retaliation under § 1981, which guarantees equal contract rights, by presenting evidence that he left immediately on vacation after his last complaint and was fired just six days later. 42 U.S.C.A. § 1981.

Appeal from the United States District Court for the Southern District of Iowa.

Counsel who presented argument on behalf of the appellant was Thomas Newkirk, Johnston, Iowa.

Counsel who presented argument on behalf of the appellee was Michael R. Reck, Des Moines, Iowa. Also appearing on the brief was Holly M. Logan, Des Moines, Iowa.

Before LOKEN, Chief Judge, RICHARD S. ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit J.

*1 Loffredo Gardens, Inc., a fresh produce company, hired Thomas Bainbridge as its warehouse manager in June 1998. Bainbridge's wife is Japanese. During Bainbridge's employment, he informed management his wife was Japanese, and complained to them about racial epithets for Asians and other minorities used by the Loffredo brothers, the company's owners and operators. On June 15, 2000, Bainbridge complained to his supervisor, Dave Dennis, that he could not take the racial slurs anymore. Dennis told Bainbridge he would

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

take care of it, then Bainbridge left on a scheduled vacation. During Bainbridge's vacation, Mike Jacobs, Lee Bunch, and Mark DeJoode, three supervisors who worked with Bainbridge, stated they would quit if Loffredo Gardens did not fire Bainbridge. It is disputed whether the supervisors went to management or whether management sought out the supervisors after they decided to terminate Bainbridge for complaining. On June 21, 2000, before Bainbridge returned, Loffredo Gardens sent him a letter stating his employment was terminated because his interpersonal skill with subordinates was problematic. Gene Loffredo, Jr., Larry Loffredo, controller Mark Zimmerman, and Dave Dennis signed the termination letter.

Bainbridge brought this action asserting he was subjected to a hostile work environment based on racial comments made by the Loffredos about Asians, blacks, and other minorities. Bainbridge also asserted his discharge was in retaliation for complaints of discrimination and harassment in violation of Title VII, 42 U.S.C. § 1981, and Iowa Code § 216. The district court granted summary judgment to Loffredo Gardens. *Bainbridge v. Loffredo Gardens, Inc.*, 2003 WL 21911063 (S.D.Iowa 2003). The district court held Loffredo Gardens was entitled to summary judgment on the merits of the hostile work environment claim and the 42 U.S.C. § 1981 retaliation claim, and Bainbridge had failed to exhaust administrative remedies on the Title VII and Iowa retaliation claims. Bainbridge appeals.

Summary judgment was proper if the evidence, viewed in the light most favorable to Bainbridge, showed there was no genuine issue of material fact and Loffredo Gardens was entitled to judgment as a matter of law. ***Jackson v. Flint*** *Ink No. Am. Corp.*, 370 F.3d 791, 792-93 (8th Cir.2004). Reviewing the district court's grant of summary judgment de novo, *see id.* at 793, we affirm on the hostile work environment claims and the Title VII and Iowa Code § 216 retaliation claims, but reverse and remand the 42 U.S.C. § 1981 retaliation claim.

[1][2][3][4][5] On appeal, Bainbridge first contends he generated a question of fact on the elements of his hostile work environment claim. To prevail, Bainbridge was required to show he is a member of a protected group, he was subjected to unwelcome harassment, the harassment was because of his membership in the group, and the harassment affected a term, condition, or privilege of his employment. *Id.* To be actionable under Title VII, the work environment must have been both objectively and subjectively offensive. *Id.* To decide whether a work environment is objectively offensive, that is, one which a reasonable person would find hostile or abusive, we examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *Id.* To constitute an objectively offensive work environment, the discriminatory conduct must be so severe or pervasive that it alters the conditions of the plaintiff's employment. *Id.* A hostile work environment exists when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated incidents. *Id.* at 794.

***2** [6] Bainbridge contends he heard the Loffredos make racially offensive remarks about Asians ("Jap," "nip," "gook") approximately once a month during his two years of employment. Nevertheless, despite taking contemporaneous notes, Bainbridge can recall only a few specific instances of racially derogatory comments about Asians made in his presence. Bainbridge asserts that on June 25, 1998, Jim Loffredo referred to a white employee as a "Jap," that on November 20, 1998, he overheard Mike Loffredo refer to an Asian customer as a "Jap," that on June 12, 1999 Mike Loffredo referred to an Asian customer as a "nip," and that on October 29, 1999, while showing his Nissan to Mike and Larry Loffredo, Larry said, "Yea, those Japs can do something right." Bainbridge also contends Mike Loffredo used the term "Jap" or "nip" in front of him at least once a month even after Bainbridge reminded him his wife

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw. Westlaw.

was Japanese. Bainbridge also contends the Loffredos used racial slurs referring to other minorities, including "spic," "wetback," "monkey," and "nigger." Bainbridge contends he complained to Gene Loffredo, Jr. in 1998 about the derogatory remarks directed at Asians. Finally, on June 25, 2000, while Bainbridge was talking with Mike Loffredo, Mike stated another "Jap" produce company was going to try to run Loffredo Gardens out of business. Bainbridge then complained to his immediate supervisor, Dave Dennis, and left on his scheduled vacation.

Under our case law, the racial slurs did not render the work environment at Loffredo Gardens objectively hostile. *See id.* at 794-95. For example, in *Jackson,* we held six instances of racially derogatory language from managers and coworkers over the course of a year and a half, together with burning cross graffiti, did not render the workplace objectively hostile. *Id.* Although managers and coworkers said, "that damn nigger," "damn black," "nigger s* *t, radio," "nigger-rigging," and "f* * *ing nigger," we pointed out two of the comments were not made to the plaintiff, two were not referring directly to him, and another was made in the heat of an altercation involving threats by the plaintiff. *Id.* at 795. Here, the remarks were also sporadic, no more than one per month, and were not even about Bainbridge, his wife, or their marriage. Instead, the alleged remarks were used in reference to customers, competitors, or other employees. Some of the remarks were merely overheard by Bainbridge. We thus conclude Bainbridge failed to present sufficient evidence that the harassment at Loffredo Gardens was so severe or pervasive that it altered the terms or conditions of his employment. *Id.* at 796.

[7] Bainbridge next asserts he exhausted his administrative remedies for his Title VII and Iowa Code § 216 claims by raising the issue of retaliation in his Iowa civil rights complaint. We disagree. Bainbridge did not check the box next to "Retaliation" on the complaint form and did not allege any facts in the complaint form connecting his termination with his alleged complaint about the racial slurs. Indeed, the Iowa civil rights complaint investigator noted he "didn't address [retaliation] because [Bainbridge] did not directly allege retaliation." We conclude the district court properly applied the relevant case law to the facts in holding Bainbridge failed to exhaust administrative remedies. *See Bainbridge v. Loffredo Gardens, Inc.,* 2003 WL 21911063, at * 4-*7 (S.D.Iowa 2003).

***3** [8][9] Bainbridge also contends the district court committed error in granting summary judgment on the merits of his § 1981 retaliation claim, for which exhaustion of administrative remedies is not required. Under the traditional *McDonnell Douglas* analysis, Bainbridge first had to establish a prima facie case of retaliation under § 1981. To do so, Bainbridge had to show he engaged in statutorily protected activity (complaining about racial slurs), Loffredo Gardens took adverse employment action against him (termination of employment), and there is a causal connection between the two events. *Jackson,* 370 F.3d at 797; *Roxas v. Presentation College,* 90 F.3d 310, 315 (8th Cir.1996) (recognizing elements of Title VII discrimination claim and § 1981 discrimination claim are the same). Second, if Bainbridge made this prima facie showing, then the burden of production shifted to Loffredo Gardens to articulate a legitimate, nondiscriminatory reason for its decision to terminate Bainbridge. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At the third step, the burden would then shift back to Bainbridge to show the legitimate reason is pretextual. *See id.* at 804; *Raytheon v. Hernandez,* 540 U.S. 44, ---, 124 S.Ct. 513, 518- 19 & n. 3, 157 L.Ed.2d 357 (2003).

The district court held Bainbridge failed to establish a prima facie case of retaliation because he did not show a causal connection between his termination from employment and his complaints about racial slurs. The court rejected Bainbridge's assertion that timing alone could establish causation. The court held that even if Bainbridge could establish a prima facie case, Loffredo Gardens articulated a legitimate, nondiscriminatory

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw. Westlaw.

reason for Bainbridge's termination-Bainbridge's inability to get along with his coworkers. The court held that the timing of Bainbridge's termination was not enough to allow a jury to infer retaliatory motive and to show Loffredo Gardens' proffered reasons were merely pretextual.

[10] Although the issue is close, we hold Bainbridge has enough circumstantial evidence to get his retaliation claim to a jury. " 'A plaintiff can establish a causal connection between statutorily protected activity and an adverse employment action through circumstantial evidence, such as the timing between the two events." ' *Jackson,* 370 F.3d at 798 (quoting *Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 819 (8th Cir.1998)). "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir.1999) (en banc). In this case, Bainbridge left immediately on vacation after his last complaint, and was fired just six days later, before he returned to work. In addition, although there are documents and testimony produced immediately before or after Bainbridge's termination, Bainbridge had no extensive disciplinary record, *cf. Jackson,* 370 F.3d at 798, despite Loffredo Gardens's claim that it had problems with Bainbridge from the beginning. Loffredo Gardens contends it demoted Bainbridge during his employment, but Bainbridge asserts he merely assumed the tasks of a subordinate in addition to his usual duties after the subordinate's termination. Because Bainbridge consistently received raises during his employment indicating more than satisfactory performance, and the record indicates no change in his job title, we give Bainbridge the benefit of the inference on this issue. A reasonable jury could infer Loffredo Produce tried to paper Bainbridge's file to justify his termination. *Bassett v. City of Minneapolis,* 211 F.3d 1097, 1107-08 (8th Cir.2000). Contrary to Loffredo Gardens's assertion that the supervisors made unsolicited threats to quit if Bainbridge remained employed, the record shows Loffredo Gardens may have sought out the supervisors to justify Bainbridge's termination. In responding to Bainbridge's claim for unemployment benefits, Bainbridge's direct supervisor, David Dennis, told the Iowa Workforce Development Center that "[w]hen Mr. Bainbridge went on vacation we got the warehouse managers together [and] heard [Bainbridge] tugged at shirts, yell[ed] at warehouse staff, et cetera." From these circumstances, a jury could reasonably conclude by a preponderance of the evidence that Loffredo's stated reason for firing Bainbridge was pretextual.

*4 We thus affirm the district court's grant of summary judgment on all claims, except for the § 1981 retaliation claim, which we remand for further proceedings.

RICHARD S. ARNOLD, Circuit Judge, dissenting.

While I join in most of the Court's result, I believe that we should also reverse the dismissal of the hostile-work-environment claim. In my opinion, the repeated, seemingly habitual, use of anti-Asian and other slurs in front of Mr. Bainbridge created a hostile work environment.

I agree with most of the Court's statement of the law. To survive the summary-judgment motion, Mr. Bainbridge needed to show that he was a member of a protected class, that he was subjected to unwelcome harassment because of his membership in the protected class, and that the harassment affected a term or condition of his employment. *Ante* at 2-3. Further, he needed to show that the harassment was both objectively and subjectively offensive. *Ibid.*

I also agree with the Court's statement of the facts. Mr. Bainbridge, a white man married to a woman of Japanese descent, heard his employers and fellow employees make offensive anti-Asian slurs approximately once a month during his two-year employment, translating to roughly 25 disparaging comments. His employers, the owners of the store, knew that the comments were being made (in no small part because they were

making them), and that the remarks were extremely offensive to Mr. Bainbridge. *Ante* at 3-4.

I disagree, however, with the Court's application of the facts to the law. I find the conduct here objectively offensive, and I believe the case should have proceeded to trial.

The Court relies heavily on the case of ***Jackson*** v. ***Flint*** *Ink N. Am. Corp.*, 370 F.3d 791 (8th Cir.2004). I think the level of conduct in this case satisfies the *Jackson* standard. In *Jackson*, the plaintiff, an African-American, endured hearing six racial epithets in 17 months and was exposed to graffiti depicting a burning cross and Klu Klux Klan markings. *Id.* at 793- 794. The Court in *Jackson*, although finding the graffiti combined with the comments sufficient evidence to survive a summary-judgment motion, did not believe the comments standing alone were sufficiently offensive. *Id.* at 795. Wanting to avoid turning Title VII into a "code of workplace civility," the Court reasoned that the slurs "were infrequent and few in number," and that there was no "steady barrage of opprobrious racial comment." *Ibid.* It noted that the result in our hostile-environment jurisprudence turns on the pervasiveness of the offensive conduct. *Id.* at 794. Similarly, we have held elsewhere that "[o]ffhand comments and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment." *Burkett v. Glickman*, 327 F.3d 658 (8th Cir.2003) .

While I concede that looking to the number of incidents per month reduces what is likely a horrific emotional experience to a numeric fraction, objectively, I think one comment every three months is different than one comment a month. Imagine an employee who gets paid once a month, and every time he goes to pick up his paycheck, he is insulted or overhears a racial slur; it is almost an exchange. I believe our Court would have no problem finding that offensive enough to survive a summary-judgment motion. This case is no different than the hypothetical except that Mr. Bainbridge did not know when to expect the comment. Once a month a remark by his boss or his co-worker would degrade his wife. That does not seem "offhanded" or "isolated." A jury could reasonably find that this pattern of conduct was habitual, routine, and pervasive.

***5** In *Crawford v. Runyan*, 37 F.3d 1338 (8th Cir.1994), we held that "summary judgment should seldom be used in employment discrimination cases." *Id.* at 1341. Since the decision in *Runyan*, we have affirmed many summary-judgment orders in employment-discrimination cases, see *e.g., Wheeler v. Aventis Pharm.*, 360 F.3d 853 (8th Cir.2004), and rightly so. Some cases just shouldn't be litigated. But, I still believe there is merit to the *Runyan* principle. In a case such as this, where there is a lot of evidence demonstrating discriminatory behavior over a sustained period of time, we should not stand in for the jury. I would reverse. This hostile-work-environment claim meets the standard set out in *Jackson* and should go to trial.

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw. Westlaw.